## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA ex. Rel.,** | : | |
| **Architectural Woodwork Industries, Inc.** | : | |
| **1845 Walnut St # 2300** | : | **CIVIL ACTION** |
| **Philadelphia, PA 19103** | : | |
| | : | |
| **Plaintiff,** | : | **NO.** |
| | : | |
| **v.** | : | |
| | : | |
| **WESTERN SURETY COMPANY** | : | |
| **101 S Reid St** | : | |
| **Sioux Falls, SD 57103** | : | |
| | : | |
| **Serve:** | : | |
| **CT Corporation** | : | |
| **1015 15th Street, NW** | : | |
| **Suite 1000** | : | |
| **Washington, D.C. 20005** | : | |
| | : | |
| **Defendant.** | : | |

## COMPLAINT

Plaintiff, the United States of America for the use and benefit of Architectural Woodwork Industries, Inc. ("AWI"), by and through undersigned counsel, hereby files this Complaint against Defendant Western Surety Company ("Western Surety"), and in support thereof avers as follows:

## JURISDICTION AND VENUE

1.      The cause of action against Defendant Western Surety arises under the Miller Act, 40 U.S.C. §§ 3131-3134 and, as a result, this Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1352.

2.      The Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) over the causes of action against Western Surety and because the amount in controversy exceeds $75,000, and the parties are all citizens of different states.

3.      Venue is proper in this District pursuant to 40 U.S.C. § 3133(b)(3), as this is the District in which the subject construction project is located and in which the subcontract described below was performed.

## PARTIES

4.      Plaintiff AWI is a Delaware corporation with its principal place of business located at 1845 Walnut Street, Suite 2300, Philadelphia, PA 19103.

5.      AWI is registered to do business in the District of Columbia.

6.      Upon information and belief, Western Surety is a South Dakota corporation with contacts and agents in the District of Columbia.

7.      Upon information and belief, Western Surety is licensed to do business and regularly conducts business in the District of Columbia, in the construction industry, as an authorized and approved surety on construction projects.

## FACTS

### General Background

8.      Beginning on or around May 23, 2016, AWI and Rand* Construction Corporation ("Rand*") entered into a subcontract (the "Subcontract") requiring AWI to, *inter alia*, engineer, project manage, furnish and install millwork as part of a construction project for the renovation and construction of the Kennedy Center Terrace Theater in Washington, D.C. (the "Project").

9.      The Subcontract was originally in the amount of $1,678,569.  A true and correct copy of the Subcontract is attached as **Exhibit 1** and incorporated herein.

10.     Upon information and belief, Rand* entered into a prime contract with the Project's owner, the United States of America ("Owner"), through its agent, John F. Kennedy Center for the Performing Arts ("Agency"), to complete all work associated with the Project.

11.     Upon information and belief, Rand*, as principal, and Western Surety, as Rand*'s surety, executed a payment bond in compliance with 40 U.S.C. § 3131 *et seq.* for the protection of all persons supplying labor and/or materials in prosecution of the work on the Project (the "Bond").  A copy of the Bond is attached as **Exhibit 2** and incorporated herein.

12.     The penal sum of the payment bond was to be the value of Rand*'s prime contract with the Owner.

**Outstanding Balance Due for AWI's Work**

13.     AWI timely engineered, furnished, installed, and provided project management for its agreed scope of work.

14.     AWI provided and completed the work it performed in a good and workmanlike manner.

15.     AWI issued monthly payment applications to Rand*, none of which were rejected; rather, all payment applications were approved.

16.     Rand* accepted all of AWI's work.

17.     Additionally, during the Project, Rand* issued change orders to AWI for additional scope work and/or changes to AWI's scope of work due to, *inter alia*, dimensional errors by trades preceding AWI's scope of work which resulted in design changes.

18.     AWI completed all of the additional work directed by Rand*.

19.     Rand* did not back charge AWI for deficient work or damages caused by AWI and incurred by Rand*.

20.     During the course of the project, AWI timely notified Rand* that extra work, outside of its base contract scope, was required and issued change order requests for the extra work.

21.     AWI requested additional time to complete all work under the Subcontract, the additional work, and for delays and disruptions to its work.

22.     After AWI provided such notice and requested additional time and money, Rand* directed and/or required AWI to perform the extra work.

23.     Additionally, Rand* approved AWI's change orders requesting that AWI be compensated for additional work.

24.     Further, once it became evident that other construction trades ahead of AWI were behind in their work, in order to mitigate any impact to AWI's work from such delays, AWI also requested that Rand* "hold dimensions."

25.     Rand* agreed to "hold dimensions" for AWI but actually failed to do so.

26.     Despite performing all of the out-of-scope work in question and accepting all of AWI's work, Rand* only paid AWI $1,129,919.92 on the Subcontract.

27.     Rand* last paid payment application #008 dated August 15, 2017.   Since application #008, AWI has issued four additional payment applications, but Rand* has failed and refused to issue payment for those applications despite having accepted them and not rejecting them.

28.     Rand* has failed and refused to pay AWI the amount remaining and due for base contract work under the Subcontract, the directed extra work and unanticipated work pursuant to the Subcontract.

29.     Rand* owes AWI $620,561.81 in unpaid balances on the Subcontract.

30.     Rand* has admitted that it owes AWI its unpaid Subcontract balances, but failed and refused to pay for any undisputed amounts.

31.     Upon information and belief, Rand* and the Owner have a dispute regarding the terms, conditions and obligations pursuant to the prime contract and the project's timely acceptance.

32.     Upon information and belief, the dispute between Rand* and the Owner does not involve AWI and/or its work.

**Additional Delay Damages Incurred by AWI**

33.     Additionally, throughout the Project, Rand*, as the general contractor, failed to schedule and coordinate the work of the various subcontractors, failed to schedule and coordinate the significant amount of extra work demanded, and failed to adhere to the "Hold-To Dimensions" it agreed to.

34.     Rand* also failed to provide and maintain a construction schedule for the Project, which delayed and hindered AWI and prevented it from being able to efficiently plan and perform its work.

35.     As a direct and proximate result of Rand*'s actions or inactions, AWI experienced interferences in its work and incurred significant increased labor, materials, equipment and various other overhead costs.

36.     AWI provided adequate manpower and supervision to the Project.

37.     AWI proceeded with and completed its work under the Subcontract often on an accelerated basis without full compensation by Rand*.

38.     Rand* knew or should have known that due to its failure to schedule and coordinate the work and project schedule, AWI would be adversely impacted and incur extra, compensable costs.

39.     AWI's work duration according to its contract schedule was to be completed by August 24, 2017.

40.     Such impacts were at times acknowledged by Rand*, including its issuance on or about November 8, 2017 of Change Order 11to AWI.  Payment for Change Order 11 has not been made by Rand* despite AWI completed the change order work.

41.     Because of delays and active interference by Rand*, AWI's work was impacted and extended, with an actual schedule that resulted in AWI working up until November 30, 2017.

42.     For example, AWI's planned work duration accounted for a set number of mobilization's and demobilizations.  As a result of the delays and active interference by Rand*, the actual number of mobilization's and demobilizations of AWI was greater than originally planned.

43.     The multiple, unplanned mobilization's and demobilizations were not the fault of AWI but instead the failure of Rand* to timely schedule, coordinate, and execute the work.

44.     Rand*'s failure to properly manage the Project schedule and to coordinate work resulted in, *inter alia*, compulsory night shifts and weekend work for AWI.

45.     The additional manpower and shifts resulted in added costs to AWI.

46.     Further, Rand* failed to timely respond to Requests for Information ("RFI").  The failure to timely respond to RFI's from AWI adversely impacted the project's schedule and AWI's work.

47.     RFI's were generated as of March 6, 2017, but no final answer was provided to the RFI's until October 31, 2017.  As a result, AWI's work could not proceed and/or proceeded in an inefficient manner.

**AWI's Damages**

48.     Rand* materially breached the Subcontract by: (1) not having areas of the site ready for AWI to perform its work; (2) causing delays in the performance of predecessor trades that forced AWI to frequently mobilize, demobilize, and remobilize, thereby creating labor inefficiencies and other cost overruns; (3) failure to pay AWI amounts owed under the Subcontract; (4) causing delays by failing to timely respond to RFIs; (5) scope changes to AWI's work without providing compensation pursuant to the Subcontract; and (6) active interference with AWI's work.

49.     As a result of Rand*'s breaches, AWI has incurred the following damages:

- Added cost from installation subcontract, caused by construction manager inability to hold dimensions and Rand*'s inability to properly sequence trades ahead of AWI: $29,612.00
- Structural Engineer added costs due to field condition changes:  $580
- Additional costs due to project delay: $86,667.73
- Added cost from fabricator for schedule acceleration: $24,673

31.     Accordingly, AWI's damages are in excess of $620,000.00

**Payment Dispute and Bond Claim**

32.     Despite AWI performing its work in conformance with the Subcontract, Rand* stopped paying AWI.

33.     On November 18, 2017, AWI provided notice to Rand* that AWI had not been paid for its September 2017 invoice and requested that Rand* explain why payment was still outstanding on the September 2017 invoice.

34.     Based on this non-payment, Rand* was in default of the Subcontract.

35.     On November 28, 2017, Rand* acknowledged that payment was owed and promised payment "by the end of this week."

36.     During the period after AWI's submission of the September 2017 invoice, AWI submitted additional invoices to Rand*, including invoices submitted for work performed during the months of October, November, and December 2017.  See **Exhibit 3**.

37.     None of these invoices have been rejected by Rand*.

38.     On December 11, 2017, Rand* informed AWI that Rand* had received payment from the Project's Owner, but failed to provide payment on AWI's outstanding invoices.

39.     On or around January 16, 2018, AWI made a claim on the Bond to Rand* and a John Doe Surety[1] based upon Rand*'s lack of payment, and requested that Rand* provide a copy of the Bond to AWI.

40.     On February 12, 2018, Rand* provided a copy of the Bond to AWI for the first time.

41.     On February 15, 2018, having finally learned the identity of Rand*'s surety for the Project, AWI sent a notice letter to Western Surety with a demand for payment based on Rand*'s failure to pay AWI pursuant to the Subcontract.   The notice letter included documentation of AWI's claim for payment.

42.     On February 21, 2018, Western Surety sent a letter in response that acknowledged AWI's notice of claim letter and requested additional documentation.

43.     On March 9, 2018, AWI sent a letter providing the requested documentation.

---

[1] AWI's claim was made to a John Doe Surety because Rand* had not provided AWI with a copy of its payment bond or its performance bond for the Project, nor had Rand* disclosed the identity of its surety for the Project.

44.     On April 11, 2018, having received no response from Western Surety or Rand* to AWI's initial claim, AWI, through counsel, contacted Western Surety.

45.     In response, Western Surety denied that it received AWI's documentation.

46.     However, AWI has confirmed that its letter containing its documentation was delivered on March 12, 2018.  See **Exhibit 4**, UPS Confirmation Receipt.

47.     By ignoring AWI's claim, Western Surety has failed and refused to honor its obligations under the Bond and pay AWI for the amounts owed by Rand*, and has ignored AWI's claim on the Bond.

48.     Notwithstanding Rand*'s refusal to pay several successive payment applications, AWI continued to perform its work on the Project until November 30, 2017.

## COUNT I
## MILLER ACT BOND CLAIM

49.     AWI incorporates the foregoing paragraphs as if set forth at length herein.

50.     AWI performed work on the Project for the benefit of Rand* and the United States of America.

51.     AWI performed all of its obligations pursuant to the terms and conditions of the Subcontract in a timely, professional, and workmanlike manner.

52.     Despite numerous requests, AWI has not been fully compensated for the labor and materials furnished by it to the Project.

53.     As a result of the additional out-of-scope work Rand* directed AWI to perform, the improper withholding of payments due and owing to AWI, and the delays and disruptions caused by Rand*, AWI has incurred costs in excess of $620,561.81.

54.     These costs are a direct and proximate result of Rand*'s failure and/or refusal to act in accordance with the Subcontract.

55. Rand* has failed to pay AWI the costs to which it is entitled.

56. These costs have been due and owing for more than ninety (90) days.

57. Pursuant to Rand*'s Bond, Western Surety is obligated, as surety for Rand*, to pay AWI for the labor, materials, and services it furnished in the prosecution of the work at the Project for the benefit of Rand* and the United States of America, for which payment has not been made.

58. AWI provided Rand* timely notice of its intent to pursue a claim against Western Surety.

59. AWI provided timely notice to Western Surety of its claim against the Bond, with documentation supporting costs due and owing to AWI for its work on the Project.

60. Western Surety failed to timely respond to AWI's claim, and accordingly has waived its right to dispute the claim or otherwise defend against AWI's claim.

61. This Complaint is being filed within one year of the date upon which AWI performed its final work pursuant to the Subcontract, November 30th, 2017.

62. All conditions precedent to commencing an action against Surety under Rand*'s Bond have been satisfied and/or have been waived by Rand* and/or Surety.

63. No payments to AWI for the amounts claimed under Rand*'s Bond have been made.

64. Western Surety has failed and refused to satisfy its obligation to make payment to AWI pursuant to the terms of the Bond.

65. AWI is entitled to payment from Western Surety pursuant to the Miller Act, 40 U.S.C. § 3133 *et seq*.

66. AWI is entitled to payment of an amount exceeding $620,561.81.

WHEREFORE, Plaintiff, Architectural Woodwork Industries, Inc., requests judgment in its favor and against Defendant Western Surety Company in an amount in excess of $620,561.81 plus interest and any other damages that this Court deems just and proper.

Date: April 24, 2018

**COHEN, SEGLIAS, PALLAS, GREENHALL
   & FURMAN, P.C.**

By:   */s/ Jackson S. Nichols*
_____

**Jackson S. Nichols, Esq.**
**D.C. Bar No. 975511**
**jnichols@cohenseglias.com**
**Lane Kelman, Esq.**
(***pro hac vice pending***)
1828 L Street, NW, Suite 705
Washington, DC 20036
Tel: (202) 466-4110
*Counsel for Plaintiff,*
*Architectural Woodwork Industries, Inc.*